**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JENNIFER AGNEW,** | ) | |
| | ) | |
| **and,** | ) | |
| | ) | |
| **ANNE CASHEL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Cause No.: 4:19-cv-03063** |
| | ) | |
| **v.** | ) | **Jury Trial Demanded** |
| | ) | |
| **ST. LOUIS COUNTY,** | ) | |
| | ) | |
| **SAM PAGE, in his official capacity,** | ) | |
| | ) | |
| **SPRING SCHMIDT, in her individual** | ) | |
| **capacity,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CAROLE BASKIN, in her individual** | ) | |
| **capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT FOR DAMAGES**

COME NOW Plaintiffs Jennifer Agnew and Anne Cashel, and for their Complaint for

Damages, state as follows:

**INTRODUCTION**

1.      This is a complaint for damages brought by Plaintiffs Jennifer Agnes and Anne

Cashel, pursuant to 42 U.S.C. §§ 1983 and 1988, against two (2) individual officials of St. Louis

County, Spring Schmidt and Carole Baskin, for their infringements upon Plaintiffs' First

Amendment rights to freedom of speech and association.  Further, Plaintiffs Agnew and Cashel

each bring a claim against St. Louis County, itself, under theories of municipal liability, for

1

enacting and maintaining unconstitutional policies, patterns, and practices in violation of their First Amendment rights.

## PARTIES

2.     Plaintiff Jennifer Agnew is and was, at all times relevant to this cause of action, a citizen of the United States of America and resident of the State of Missouri.

3.     Plaintiff Anne Cashel is and was, at all time relevant to this cause of action, a citizen of the United States and resident of the State of Missouri.

4.     Defendant St. Louis County is a body politic, organized and existing pursuant to Missouri law.

5.     Defendant Sam Page is and was, at all times relevant to this cause of action, Defendant St. Louis County's Executive.  On information and belief, Defendant Page holds and held, at all times relevant to this cause of action, final policymaking authority over the matters alleged herein.

6.     Defendant Spring Schmidt is and was, at all times relevant to this cause of action, an employee of Defendant St. Louis County and the Director of the Department of Public Health. Further, Defendant Schmidt is and was, at all times relevant to this cause of action, acting under color of state law, with respect to the matters alleged herein.  Finally, for purposes of this cause of action, Defendant Schmidt is named in her individual capacity.

7.     Defendant Carole Baskin is and was, at all time relevant to this cause of action, an employee of Defendant St. Louis County and the Director of the Department of Public Health. Further, Defendant Baskin is and was, at all times relevant to this cause of action, acting under color of state law, with respect to the matters alleged herein.  Finally, for purposes of this cause of action, Defendant Baskin is named in her individual capacity.

2

## JURISDICTION AND VENUE

8.      Jurisdiction is proper to this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as Defendants are located and the events giving rise to Plaintiffs' claims occurred within the geographical boundaries of this jurisdictional district.

## FACTUAL ALLEGATIONS

10.      St. Louis County Department of Public Health (herein "Public Health") is a governmental department and/or agency of Defendant St. Louis County.

11.      St. Louis County Animal Care and Control is a governmental office, sub-department, or agency of Public Health.

12.      St. Louis County Animal Care and Control maintains and operates the St. Louis County Pet Adoption Center (herein "the Shelter"), 10521 Baur Boulevard, Olivette, Missouri 63132.

13.      The Shelter is funded by Defendant St. Louis County's budget and with public dollars.

14.      The Shelter houses and cares for Defendant St. Louis County's lost, stray, and abandoned dogs and cats, as well as offers public pet adoptions.

15.      Defendant Spring Schmidt (herein "Defendant Schmidt") is an employee of Defendant St. Louis County,  holding the supervisory title of "Director" of Public Health and having managerial responsibility and decision-making authority for her department, including Animal Care and Control and the Shelter.

16.      Defendant Carole Baskin (herein "Defendant Baskin") is an employee of Defendant St. Louis County, holding the supervisory title of "Director" of Public Health and

having managerial responsibility and decision-making authority for her department, including Animal Care and Control and the Shelter.

17.    The Shelter maintains a volunteer program through which interested individuals can volunteer their time to assist at the Shelter, including by providing care for the animals, walking and interacting with the dogs and cats, assisting in adoptions, cleaning kennels, and other daily functions related to the care of the animals and operation of the Shelter.

18.    At present, Defendant St. Louis County's Shelter has a roster of approximately 425 unpaid volunteers.

19.    As a group, the Shelter volunteers provide approximately 1,500 hours of unpaid services to Defendant St. Louis County *per* month, estimated by Defendant St. Louis County to have a value in excess of $30,000.00.

20.    Plaintiff Jennifer Agnew (herein "Plaintiff Agnew") is a current and active Shelter volunteer and has been an active Shelter volunteer since approximately September, 2018.

21.    Plaintiff Agnew derives feelings of happiness, enjoyment, and community involvement from her volunteer service and from being able to help and care for Defendant St. Louis County's lost, stray, and abandoned dogs and cats.

22.    Plaintiff Anne Cashel (herein "Plaintiff Cashel") is a current and active Shelter volunteer and has been an active volunteer since approximately early 2012.

23.    Plaintiff Cashel derives feelings of happiness, enjoyment, and community involvement from her volunteer service and from being able to help and care for Defendant St. Louis County's lost, stray, and abandoned dogs and cats.

24.    The management of, and conditions at, the Shelter are and have been a subject of public interest and debate in the St. Louis area.

4

25.    The volunteers, including Plaintiffs Agnew and Cashel, have witnessed firsthand and have documented Shelter mismanagement; unnecessary euthanasia of otherwise adoptable animals; mistreatment of the animals by staff; improper manipulation of euthanasia statistics by misleading and deceiving owners into specifically request euthanasia of their dog or cat; and failures by staff and management to provide humane care and treatment to the Shelter animals, including but not limited to failures to provide the dogs with sanitary living conditions, adequate food, exercise, water, and veterinary care.

26.    Plaintiff Agnew has submitted open records requests to Defendant St. Louis County regarding the Shelter and its management and made documents received pursuant to those requests publicly available to others.

27.    Since at least December, 2018, numerous volunteers, including Plaintiffs Agnew and Cashel, spoken publicly regarding the aforementioned concerns at public meetings of Defendant St. Louis County's Council; at public meetings of Defendant St. Louis County's Animal Advisory Board; in direct communications, both oral and written, to elected officials of Defendant St. Louis County; in direct communications, both oral and written, to Shelter management, including but not limited to Defendant Schmidt, Defendant Baskin, Katrina Utz, and to members of the media and press.

28.    As a result of these acts of public speech, Defendants began to restrict privileges previously afforded to volunteers, including but not limited to access to certain rooms within the Shelter and information about and contact with the animals.

29.    Based on these speech acts of the volunteers, including both Plaintiffs Agnew and Cashel, Defendants have been the subject of highly critical media reports regarding the Shelter and its management.

5

30.     Multiple media and press reports credited the Shelter volunteers with being the sources of their information regarding the Shelter's "statistical sham" and other problems and criticisms of the Shelter, its management, and Defendant St. Louis County, including but not limited to:

   a.     Fox 2 News which reported that "Fox 2 started asking questions about the euthanasia rate at St. Louis County ACC **after volunteers raised concerns about what they were seeing firsthand**."

   b.     KMOX – News Radio 1120 which reported that "Volunteers claimed management was hostile as a result of their going public."

31.     On information and belief, statements made by Plaintiffs Agnew and Cashel during public meetings were used as sources of information by the press and media in their reports regarding the Shelter, its management, and its poor conditions.

32.     On information and belief, Defendants believed that Plaintiffs Agnew and Cashel were included among the "volunteers" who were the sources of information used by the press and media in their reports regarding the Shelter, its management, and its poor conditions.

33.     In response to statements made by the volunteers, including Plaintiffs Agnew and Cashel, Defendant Schmidt was forced to publicly respond both to the press and media and before Defendant St. Louis County's Council.

34.     On information and belief, Defendant Schmidt was embarrassed and angered by the criticisms raised by the volunteers, as reported in the media and press, including those made by Plaintiffs Agnew and Cashel.

35.    On information and belief, Defendant Baskin was embarrassed and angered by the criticisms raised by the volunteers, as reported in the media and press, including those made by Plaintiffs Agnew and Cashel.

36.    On or about October 9, 2019, the *Riverfront Times* published an extensive and lengthy article critical of Shelter management and conditions.

37.    In the aforementioned article, the *Riverfront Times* stated that the Shelter had been "staggered by scandal," including "the release of an audit that exposed the misleading nature of the shelter's past euthanasia reporting [and that] the shelter's celebrated euthanasia-lowering successes have been revealed to be a **statistical sham**."

38.    In the aforementioned article, the *Riverfront Times* reported that "[i]n interviews with the *Riverfront Times*, **volunteers and county officials** offer[ed] clashing viewpoints on who deserves the most fault . . .."

39.    On information and belief, Defendants Schmidt, and Baskin were embarrassed and angered by the *Riverfront Times* article and blamed the volunteers, including Plaintiffs Agnew and Cashel, for media leaks.

40.    On or about October 16, 2019, seven (7) days after the critical *Riverfront Times* article, Defendant Baskin had a meeting with the volunteers and pointedly stated that Defendant St. Louis County was not required to have volunteers at all.

41.    Volunteers, including Plaintiffs Agnew and Cashel, understood Defendant Baskin's aforementioned statement to be a direct threat to them and the volunteer program.

42.    On or about October 22, 2019, Plaintiff Agnew intervened to stop a fight between two Shelter dogs after observing two paid Shelter employees attempting to stop this fight using improper methods, which violated Shelter procedures and training.

43.     Plaintiff Agnew criticized the aforementioned staff members for their violations of procedures and training.

44.     On or about October 22, 2019, Plaintiff Agnew was suspended from her position as a volunteer and barred from returning to the Shelter.

45.     As of November 7, 2019, Plaintiff Agnew has yet to receive any formal notice or explanation as to the grounds for her suspension or formal opportunity to contest her suspension.

46.     On or about October 25, 2019, Plaintiff Agnew spoke publicly about her suspension and the conditions and management of the Shelter in a widely-circulated post to social media, which Shelter volunteers shared and commented upon.

47.     Plaintiff Agnew has, in the past, made other public posts to social media that were critical of the Shelter and its management, both on her personal social media pages and to open and closed social media pages belonging to various groups.

48.     Plaintiff Cashel has, in the past, made public posts to social media critical of the Shelter and its management, both on her personal social media pages and to open and closed social media pages belonging to various groups.

49.     Plaintiff Agnew is and was affiliated with St. Louis County SAVE, a not-for-profit organization, which had previously engaged in public criticism of, and/or was perceived by Defendants as critical of the Shelter, its management, its conditions, its care and treatment of the Shelter animals, and its euthanasia practices and adoption policies.

50.     Plaintiff Agnew is and was affiliated with other social media groups, both consisting of Shelter volunteers and/or allowing postings from Shelter volunteers critical of the Shelter and its management.

51.    Plaintiff Cashel was affiliated with St. Louis County SAVE, a not-for-profit organization, which had previously engaged in public criticism of, and/or was perceived by Defendants as critical of the Shelter, its management, its conditions, its care and treatment of the Shelter animals, and its euthanasia practices and adoption policies.

52.    Plaintiff Cashel is and was affiliated with other social media groups, both consisting of Shelter volunteers and/or allowing postings from Shelter volunteers critical of the Shelter and its management.

53.    On information and belief, Defendants were aware of Plaintiff Agnew's social media post of October 25, 2019.

54.    On information and belief, Defendants were aware of other posts critical of the Shelter and its management that were made by volunteers, including Plaintiffs Agnew and Cashel.

55.    On information and belief, Defendants were surreptitiously monitoring the social media postings and pages of the volunteers, both personal and group pages, including those of Plaintiffs Agnew and Cashel.

56.    On information and belief, Defendant Schmidt stated that she and other employees of Defendant St. Louis County "had eyes on" the volunteers' social media pages and posts.

57.    On or about October 25, 2019, a mere two (2) days after Plaintiff Agnew's widely circulated social media post, Defendants terminated the group of approximately 425 volunteers at the Shelter in their entirety, including Plaintiffs Agnew and Cashel, effective November 8, 2019.

58.    In terminating the volunteer staff, including Plaintiffs Agnew and Cashel, Defendants stated that:

        a.      "the **last day** that all current volunteers will be able to volunteer under the current volunteer program is Thursday, November 7";

        b.      "[moving forward] **prior to being accepted** as volunteers . . . any **prospective volunteer** will submit a new application, participate in an individual **interview** . . . and, **if accepted as a volunteer**, attend a restructured orientation class . . ."; and

        c.      "**[n]ew applications** to volunteer will not be accepted until after the November 8 re-boot and **everyone will have to re-apply and go through the new process** . . .."

59.    After November 7, 2019, none of the volunteers, including Plaintiffs Agnew and Cashel, are permitted to enter the shelter and serve as volunteers unless they reapply and are rehired as volunteers.

60.    Defendants have not released any finalized or written "re-training" plan or manual regarding the purported "re-boot" of the volunteer program at the Shelter.

61.    On information and belief, as of November 7, 2019, Defendants have no finalized or written "re-trainining" plan or manual, contrary to Defendant Schmidt's statements to Defendant St. Louis County's Council and the media.

62.    Defendants Schmidt and Baskin do not plan to allow all of the previous volunteers to return to the Shelter.

63.    Defendant Baskin has informed volunteers that the re-hiring and re-application process will result in "some attrition."

10

64.     Defendant St. Louis County Councilwoman Kelli Dunaway stated that the Shelter was "burdened by some obnoxious volunteers."

65.     Plaintiff Agnew understood the comments made by Defendant Schmidt and Councilwoman Dunaway to be referring to her and the other volunteers who had spoken out about the Shelter and its management at public meetings, to the press and media, and to Defendant St. Louis County's officials and Shelter management.

66.     On information and belief, the "re-application" and "re-interview" process is and/or will be designed to be burdensome and time-consuming in hopes of discouraging some of the volunteers from returning to the Shelter.

67.     On information and belief, Defendants Schmidt and Baskin will have final approval as to whether individual applicants are accepted or rejected.

68.     Plaintiff Agnew believes that her re-application to the volunteer program would be denied by Defendants Schmidt and/or Baskin.

69.     Plaintiff Cashel believes that her re-application to the volunteer program would be denied by Defendants Schmidt and Baskin.

70.     On information and belief, Defendants terminated the volunteers, including Plaintiffs Agnew and Cashel, for reasons unrelated to performance, violations of procedures, and/or any other "for cause" justifications.

71.     On information and belief, Defendants have terminated, the entire volunteer staff, in order to purge and eliminate volunteers, such as Plaintiffs Agnew and Cashel, due to their engaging in public speech and criticism of Defendants, the Shelter's staff, the Shelter's conditions, and the poor treatment of the animals housed therein.

72.     On information and belief, Defendants have terminated the entirety of the volunteer staff in order to chill and discourage future speech by any volunteer who would potentially seek to return to the volunteer program, including Plaintiffs and Cashel.

73.     The impending loss of her ability to volunteer at the Shelter has caused Plaintiff Agnew to suffer anxiety, distress, feelings of regret, and sorrow, arising both from concern for the animals and loss of the possibility of serving her community.

74.     The impending loss of her ability to volunteer at the Shelter has caused Plaintiff Cashel to suffer anxiety, distress, feeling of regret, and sorrow, arising both from concern for the animals and loss of the possibility of serving her community.

75.     Defendant St. Louis County has unlawfully required volunteers to sign a confidentiality and non-disclosure agreement as a condition of serving as a volunteer.

76.     On information and belief, after November 7, 2019, Defendant St. Louis County will require all volunteers to sign a new and more restrictive confidentiality and non-disclosure agreement.

77.     On information and belief, Defendant St. Louis County does not require its employees or volunteers in other departments to sign such restrictive confidentiality and non-disclosure agreements, as is required by the Shelter

78.     On information and belief, any volunteer who is allowed to return to the Shelter following his/her termination will be required to surrender his/her cell phone and/or other electronic devices to Shelter management prior to entering the non-public areas of the Shelter so as to prevent the documentation of the conditions inside the Shelter and of the animals themselves..

## LEGAL CLAIMS

### Counts I - First Amendment Retaliation for the Exercises of Protected Speech

### Plaintiff Jennifer Agnew against Defendant Spring Schmidt

79.     Plaintiff Jennifer Agnew hereby incorporates by reference paragraphs 2 through 78 of this Complaint by and as if set forth fully herein.

80.     The status as a government volunteer constitutes a valuable governmental benefit. *Cuffley v. Mickes*, 208 F.3d 702, 707-708, and fn. 5 (8th Cir. 2008)(citations omitted); *See also Fancy Cat Rescue Team, Inc. v. Crenson*, Cause No. JKB-14-1073, *Memorandum* (D.Md. Jan. 21, 2015).

81.     A governmental and/or public entity "may not deny a benefit to a person on a basis that infringes upon his constitutionally protected interests – *especially, his interest in his freedom of speech*."  *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)(emphasis added).

82.     Plaintiff Agnew's position as a volunteer at Defendants' Pet Adoption Center constituted a valuable governmental benefit, including the benefits of serving her community by partnering with a government organization.

83.     Plaintiff Agnew engaged in acts of protected speech by speaking about a matter of public interest and concern at public meetings, to elected officials and other governmental employee, to the media and press, and on social media.

84.     Defendant Spring Schmidt, both individually and in concert with others, took adverse action against Plaintiff Agnew for her acts of protected speech sufficient to chill a person of ordinary firmness from continuing in that activity, including but not limited to losses of privileges and culminating in her termination from her position as a volunteer.

13

85. Defendant Schmidt's actions, both individually and in concert with others, were motivated at least in part by Plaintiff Agnew's exercise of her rights to freedom of speech.

86. Defendant Schmidt's actions, both individually and in concert with others, exhibited a reckless or callous disregard of and/or indifference to Plaintiff Agnew's protected constitutional rights, which justifies an award of punitive damages.

87. As the result of Defendant Schmidt's unlawful actions, both individually and in concert with others, Plaintiff Agnew has been forced to retain counsel in this matter and has incurred and will continue to incur legal costs in this matter and, therefore, is entitled to an award of attorneys' fees and costs, as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Jennifer Agnew respectfully prays that this Honorable Court enter judgement in her favor and individually against Defendant Spring Schmidt for unlawful retaliation for exercise of her First Amendment rights to free speech; grant her an award compensatory damages in amount deemed just and reasonable by this Court; grant her an award of punitive damages deemed just and reasonable by this Court; order Defendants to pay her attorneys' fees and legal costs; and grant her any and all other relief, both legal and equitable, to which she is entitled by law.

### Counts II – First Amendment Retaliation for the Exercises of Rights to Freedom of Association

### Plaintiff Jennifer Agnew against Defendant Spring Schmidt

88. Plaintiff Jennifer Agnew hereby incorporates by reference paragraphs 2 through 87 of this Complaint and as if set forth fully herein.

89. The status as a government volunteer constitutes a valuable governmental benefit. *Cuffley v. Mickes*, 208 F.3d 702, 707-708, and fn. 5 (8th Cir. 2008)(citations omitted); *See also*

*Fancy Cat Rescue Team, Inc. v. Crenson*, Cause No. JKB-14-1073, *Memorandum* (D.Md. Jan. 21, 2015).

90.     A governmental and/or public entity "may not deny a benefit to a person on a basis that infringes upon his constitutionally protected interests – especially, his interest in his freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

91.     Plaintiff Agnew's position as a volunteer at Defendants' Pet Adoption Center constituted a valuable governmental benefit, including the benefits of serving her community by partnering with a government organization.

92.     Plaintiff Agnew engaged in acts of association by associating herself with and participating in the activities of certain organizations and groups which were perceived as critical of Defendants and the management of Defendant St. Louis County's Pet Adoption Center ("Shelter").

93.     Defendant Spring Schmidt knew and/or perceived Plaintiff Agnew as belonging to and/or associating herself with certain organizations and groups which she perceived as critical of Defendants and the management of Defendant St. Louis County's Pet Adoption Center ("Shelter").

94.     Defendant Schmidt, both individually and in concert with others, took adverse action against Plaintiff Agnew for her associations with certain organizations and groups sufficient to chill a person of ordinary firmness from continuing in that activity, including but not limited to losses of privileges and culminating in her termination from her position as a volunteer.

95.     Defendant Schmidt's actions, both individually and in concert with others, were motivated at least in part by Plaintiff Agnew's exercise of her rights to freedom of association.

96.    Defendant Schmidt's actions, both individually and in concert with others, exhibited a reckless or callous disregard of and/or indifference to Plaintiff Agnew's protected constitutional rights, which justifies an award of punitive damages.

97.    As the result of Defendant Schmidt's unlawful actions, both individually and in concert with others, Plaintiff Agnew has been forced to retain counsel in this matter and has incurred and will continue to incur legal costs in this matter and, therefore, is entitled to an award of attorneys' fees and costs, as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Jennifer Agnew respectfully prays that this Honorable Court enter judgement in her favor and individually against Defendant Spring Schmidt for unlawful retaliation for exercise of her First Amendment rights to freedom of association; grant her an award compensatory damages in amount deemed just and reasonable by this Court; grant her an award of punitive damages deemed just and reasonable by this Court; order Defendants to pay her attorneys' fees and legal costs; and grant her any and all other relief, both legal and equitable, to which she is entitled by law.

### Counts III - First Amendment Retaliation for the Exercises of Protected Speech
### Plaintiff Jennifer Agnew against Defendant Carole Baskin

98.    Plaintiff Jennifer Agnew hereby incorporates by reference paragraphs 2 through 97 of this Complaint and as if set forth fully herein.

99.    The status as a government volunteer constitutes a valuable governmental benefit. *Cuffley v. Mickes*, 208 F.3d 702, 707-708, and fn. 5 (8th Cir. 2008)(citations omitted); *See also Fancy Cat Rescue Team, Inc. v. Crenson*, Cause No. JKB-14-1073, *Memorandum* (D.Md. Jan. 21, 2015).

100.    A governmental and/or public entity "may not deny a benefit to a person on a basis that infringes upon his constitutionally protected interests – *especially, his interest in his freedom of speech*." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)(emphasis added).

101.    Plaintiff Agnew's position as a volunteer at Defendants' Pet Adoption Center constituted a valuable governmental benefit, including the benefits of serving her community by partnering with a government organization.

102.    Plaintiff Agnew engaged in acts of protected speech by speaking about a matter of public interest and concern at public meetings, to elected officials and other governmental employee, to the media and press, and on social media.

103.    Defendant Carole Baskin, both individually and in concert with others, took adverse action against Plaintiff Agnew for her acts of protected speech sufficient to chill a person of ordinary firmness from continuing in that activity, including but not limited to losses of privileges and culminating in her termination from her position as a volunteer.

104.    Defendant Baskin's actions, both individually and in concert with others, were motivated at least in part by Plaintiff Agnew's exercise of her rights to freedom of speech.

105.     Defendant Baskin's actions, both individually and in concert with others, exhibited a reckless or callous disregard of and/or indifference to Plaintiff Agnew's protected constitutional rights, which justifies an award of punitive damages.

106.    As the result of Defendant Baskin's unlawful actions, both individually and in concert with others, Plaintiff Agnew has been forced to retain counsel in this matter and has incurred and will continue to incur legal costs in this matter and, therefore, is entitled to an award of attorneys' fees and costs, as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Jennifer Agnew respectfully prays that this Honorable Court

17

enter judgement in her favor and individually against Defendant Carole Baskin for unlawful

retaliation for exercise of her First Amendment rights to free speech; grant her an award

compensatory damages in amount deemed just and reasonable by this Court; grant her an award

of punitive damages deemed just and reasonable by this Court; order Defendants to pay her

attorneys' fees and legal costs; and grant her any and all other relief, both legal and equitable, to

which she is entitled by law.

### Count IV - First Amendment Retaliation for the Exercises of Rights to Freedom of Association

### Plaintiff Jennifer Agnew against Defendant Carole Baskin

107.    Plaintiff Jennifer Agnew hereby incorporates by reference paragraphs 2 through

106 of this Complaint and as if set forth fully herein.

108.    The status as a government volunteer constitutes a valuable governmental benefit.

*Cuffley v. Mickes*, 208 F.3d 702, 707-708, and fn. 5 (8th Cir. 2008)(citations omitted); *See also*

*Fancy Cat Rescue Team, Inc. v. Crenson*, Cause No. JKB-14-1073, *Memorandum* (D.Md. Jan.

21, 2015).

109.    A governmental and/or public entity "may not deny a benefit to a person on a

basis that infringes upon his constitutionally protected interests – especially, his interest in his

freedom of speech."  *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

110.    Plaintiff Agnew's position as a volunteer at Defendants' Pet Adoption Center

constituted a valuable governmental benefit, including the benefits of serving her community by

partnering with a government organization.

111.    Plaintiff Agnew engaged in acts of association by associating herself with and

participating in the activities of certain organizations and groups which were perceived as critical

18

of Defendants and the management of Defendant St. Louis County's Pet Adoption Center ("Shelter").

112.    Defendant Carole Baskin knew and/or perceived Plaintiff Agnew as belonging to and/or associating herself with certain organizations and groups which she perceived as critical of Defendants and the management of Defendant St. Louis County's Pet Adoption Center ("Shelter").

113.    Defendant Baskin, both individually and in concert with others, took adverse action against Plaintiff Agnew for her associations with certain organizations and groups sufficient to chill a person of ordinary firmness from continuing in that activity, including but not limited to losses of privileges and culminating in her termination from her position as a volunteer.

114.    Defendant Baskin's actions, both individually and in concert with others, were motivated at least in part by Plaintiff Agnew's exercise of her rights to freedom of association.

115.    Defendant Baskin's actions, both individually and in concert with others, exhibited a reckless or callous disregard of and/or indifference to Plaintiff Agnew's protected constitutional rights, which justifies an award of punitive damages.

116.    As the result of Defendant Baskin's unlawful actions, both individually and in concert with others, Plaintiff Agnew has been forced to retain counsel in this matter and has incurred and will continue to incur legal costs in this matter and, therefore, is entitled to an award of attorneys' fees and costs, as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Jennifer Agnew respectfully prays that this Honorable Court enter judgement in her favor and individually against Defendant Carole Baskin for unlawful retaliation for exercise of her First Amendment rights to freedom of association; grant her an

award compensatory damages in amount deemed just and reasonable by this Court; grant her an award of punitive damages deemed just and reasonable by this Court; order Defendants to pay her attorneys' fees and legal costs; and grant her any and all other relief, both legal and equitable, to which she is entitled by law.

### Count V – Unlawful Policy, Practice, or Custom

### Plaintiff Jennifer Agnew against Defendants St. Louis County and Sam Page

117.    Plaintiff Jennifer Agnew hereby incorporates by reference paragraphs 2 through 116 of this Complaint and as if set forth fully herein.

118.    As described herein, Defendants Spring Schmidt and Carole Baskin, while acting under color of state law and in concert with others, deprived Plaintiff Agnew of her rights, privileges, and immunities as secured by the Constitution of the United States of America by retaliating against her for exercise of her First Amendment rights to freedoms of speech and association.

119.    The misconduct of the individually-named Defendant officials of Defendant St. Louis County, as described herein, was objectively unreasonable and undertaken with malice, willfulness, and/or reckless indifference to the rights of Ms. Agnew.

120.    The misconduct of the individually-named Defendants, as described herein, was authorized by and undertaken pursuant to a policy, practice, and custom that what so widespread and well-settled as to constitute an official policy and/or standard operating procedure of Defendant St. Louis County in that:

(a)    Defendant St. Louis County adopted an official policy to terminate the entirety of the Shelter volunteers, including Plaintiff Agnew, and subject any terminated volunteer to an application and interview process designed to eliminate

20

those who, like Plaintiff Agnew, had engaged in acts of protected speech that were critical of Defendants St. Louis County, Schmidt, and Baskin.

(b)    This practice and custom was so widespread and well-settled that that the policymaker(s) of Defendant St. Louis County, including Defendant Page, knew and/or should have known of it.

(c)    Defendant St. Louis County openly acknowledges and has ratified the existence of this policy, practice, or custom in its October 25, 2019 email terminating the volunteer staff in their entirety, as well as in subsequent emails and public statements.

121.    The serious harms incurred by Plaintiff Agnew were the direct consequence of the official policy, practice, or custom of Defendant St. Louis County.

122.    As a direct and proximate consequence of the acts of Defendant St. Louis County, Plaintiff Agnew suffered damages in the form of, *inter alia*, deprivation of her constitutional rights as guaranteed under the First and Fourteenth Amendments.

123.    As the result of the actions of the individually-named Defendants and Defendant St. Louis County, Plaintiff Agnew has suffered and continues to suffer injury and damages.

124.    As a result of Defendant St. Louis County's unlawful actions and infringements of her protected rights, Plaintiff Agnew has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Jennifer Agnew respectfully prays that this Honorable Court enter judgement in her favor and individually against Defendants St. Louis County and Sam Page for adopting and/or maintaining an unlawful policy, pattern, or custom which resulted in the infringements of Plaintiff Agnew's First Amendment rights to freedom of association; grant

her an award compensatory damages in amount deemed just and reasonable by this Court; grant her an award of punitive damages deemed just and reasonable by this Court; order Defendants to pay her attorneys' fees and legal costs; and grant her any and all other relief, both legal and equitable, to which she is entitled by law.

### Counts VI - First Amendment Retaliation for the Exercises of Protected Speech
### Plaintiff Anne Cashel against Defendant Spring Schmidt

125.     Plaintiff Anne Cashel hereby incorporates by reference paragraphs 2 through 124 of this Complaint and as if set forth fully herein.

126.     The status as a government volunteer constitutes a valuable governmental benefit. *Cuffley v. Mickes*, 208 F.3d 702, 707-708, and fn. 5 (8th Cir. 2008)(citations omitted); *See also Fancy Cat Rescue Team, Inc. v. Crenson*, Cause No. JKB-14-1073, *Memorandum* (D.Md. Jan. 21, 2015).

127.     A governmental and/or public entity "may not deny a benefit to a person on a basis that infringes upon his constitutionally protected interests – *especially, his interest in his freedom of speech*." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)(emphasis added).

128.     Plaintiff Cashel's position as a volunteer at Defendants' Pet Adoption Center constituted a valuable governmental benefit, including the benefits of serving her community by partnering with a government organization.

129.     Plaintiff Cashel engaged in acts of protected speech by speaking about a matter of public interest and concern at public meetings, to elected officials and other governmental employee, to the media and press, and on social media.

130.     Defendant Spring Schmidt, both individually and in concert with others, took adverse action against Plaintiff Cashel for her acts of protected speech sufficient to chill a person

of ordinary firmness from continuing in that activity, including but not limited to losses of privileges and culminating in her termination from her position as a volunteer.

131.    Defendant Schmidt's actions, both individually and in concert with others, were motivated at least in part by Plaintiff Cashel's exercise of her rights to freedom of speech.

132.     Defendant Schmidt's actions, both individually and in concert with others, exhibited a reckless or callous disregard of and/or indifference to Plaintiff Cashel's protected constitutional rights, which justifies an award of punitive damages.

133.    As the result of Defendant Schmidt's unlawful actions, both individually and in concert with others, Plaintiff Cashel has been forced to retain counsel in this matter and has incurred and will continue to incur legal costs in this matter and, therefore, is entitled to an award of attorneys' fees and costs, as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Anne Cashel respectfully prays that this Honorable Court enter judgement in her favor and individually against Defendant Spring Schmidt for unlawful retaliation for exercise of her First Amendment rights to free speech; grant her an award compensatory damages in amount deemed just and reasonable by this Court; grant her an award of punitive damages deemed just and reasonable by this Court; order Defendants to pay her attorneys' fees and legal costs; and grant her any and all other relief, both legal and equitable, to which she is entitled by law.

### Counts VII – First Amendment Retaliation for the Exercises of Rights to Freedom of Association

### Plaintiff Anne Cashel against Defendant Spring Schmidt

134.    Plaintiff Anne Cashel hereby incorporates by reference paragraphs 2 through 133 of this Complaint and as if set forth fully herein.

135.    The status as a government volunteer constitutes a valuable governmental benefit. *Cuffley v. Mickes*, 208 F.3d 702, 707-708, and fn. 5 (8th Cir. 2008)(citations omitted); *See also Fancy Cat Rescue Team, Inc. v. Crenson*, Cause No. JKB-14-1073, *Memorandum* (D.Md. Jan. 21, 2015).

136.    A governmental and/or public entity "may not deny a benefit to a person on a basis that infringes upon his constitutionally protected interests – especially, his interest in his freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

137.    Plaintiff Cashel's position as a volunteer at Defendants' Pet Adoption Center constituted a valuable governmental benefit, including the benefits of serving her community by partnering with a government organization.

138.    Plaintiff Cashel engaged in acts of association by associating herself with and participating in the activities of certain organizations and groups which were perceived as critical of Defendants and the management of Defendant St. Louis County's Pet Adoption Center ("Shelter").

139.    Defendant Spring Schmidt knew and/or perceived Plaintiff Cashel as belonging to and/or associating herself with certain organizations and groups which she perceived as critical of Defendants and the management of Defendant St. Louis County's Pet Adoption Center ("Shelter").

140.    Defendant Cashel, both individually and in concert with others, took adverse action against Plaintiff Cashel for her associations with certain organizations and groups sufficient to chill a person of ordinary firmness from continuing in that activity, including but not limited to losses of privileges and culminating in her termination from her position as a volunteer.

141.    Defendant Cashel's actions, both individually and in concert with others, were motivated at least in part by Plaintiff Cashel's exercise of her rights to freedom of association.

142.    Defendant Schmidt's actions, both individually and in concert with others, exhibited a reckless or callous disregard of and/or indifference to Plaintiff Cashel's protected constitutional rights, which justifies an award of punitive damages.

143.    As the result of Defendant Schmidt's unlawful actions, both individually and in concert with others, Plaintiff Cashel has been forced to retain counsel in this matter and has incurred and will continue to incur legal costs in this matter and, therefore, is entitled to an award of attorneys' fees and costs, as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Anne Cashel respectfully prays that this Honorable Court enter judgement in her favor and individually against Defendant Spring Schmidt for unlawful retaliation for exercise of her First Amendment rights to freedom of association; grant her an award compensatory damages in amount deemed just and reasonable by this Court; grant her an award of punitive damages deemed just and reasonable by this Court; order Defendants to pay her attorneys' fees and legal costs; and grant her any and all other relief, both legal and equitable, to which she is entitled by law.

### Counts VIII - First Amendment Retaliation for the Exercises of Protected Speech
### Plaintiff Anne Cashel against Defendant Carole Baskin

144.    Plaintiff Anne Cashel hereby incorporates by reference paragraphs 2 through 143 of this Complaint and as if set forth fully herein.

145.    The status as a government volunteer constitutes a valuable governmental benefit. *Cuffley v. Mickes*, 208 F.3d 702, 707-708, and fn. 5 (8th Cir. 2008)(citations omitted); *See also*

*Fancy Cat Rescue Team, Inc. v. Crenson*, Cause No. JKB-14-1073, *Memorandum* (D.Md. Jan. 21, 2015).

146.    A governmental and/or public entity "may not deny a benefit to a person on a basis that infringes upon his constitutionally protected interests – *especially, his interest in his freedom of speech.*"  *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)(emphasis added).

147.    Plaintiff Cashel's position as a volunteer at Defendants' Pet Adoption Center constituted a valuable governmental benefit, including the benefits of serving her community by partnering with a government organization.

148.    Plaintiff Cashel engaged in acts of protected speech by speaking about a matter of public interest and concern at public meetings, to elected officials and other governmental employee, to the media and press, and on social media.

149.    Defendant Carole Baskin, both individually and in concert with others, took adverse action against Plaintiff Cashel for her acts of protected speech sufficient to chill a person of ordinary firmness from continuing in that activity, including but not limited to losses of privileges and culminating in her termination from her position as a volunteer.

150.    Defendant Baskin's actions, both individually and in concert with others, were motivated at least in part by Plaintiff Cashel's exercise of her rights to freedom of speech.

151.     Defendant Baskin's actions, both individually and in concert with others, exhibited a reckless or callous disregard of and/or indifference to Plaintiff Cashel's protected constitutional rights, which justifies an award of punitive damages.

152.    As the result of Defendant Baskin's unlawful actions, both individually and in concert with others, Plaintiff Cashel has been forced to retain counsel in this matter and has

26

incurred and will continue to incur legal costs in this matter and, therefore, is entitled to an award

of attorneys' fees and costs, as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Anne Cashel respectfully prays that this Honorable Court

enter judgement in her favor and individually against Defendant Carole Baskin for unlawful

retaliation for exercise of her First Amendment rights to free speech; grant her an award

compensatory damages in amount deemed just and reasonable by this Court; grant her an award

of punitive damages deemed just and reasonable by this Court; order Defendants to pay her

attorneys' fees and legal costs; and grant her any and all other relief, both legal and equitable, to

which she is entitled by law.

### Count IX - First Amendment Retaliation for the Exercises of Rights to Freedom of Association

### Plaintiff Anne Cashel against Defendant Carole Baskin

153.    Plaintiff Anne Cashel hereby incorporates by reference paragraphs 2 through 152

of this Complaint and as if set forth fully herein.

154.    The status as a government volunteer constitutes a valuable governmental benefit.

*Cuffley v. Mickes*, 208 F.3d 702, 707-708, and fn. 5 (8th Cir. 2008)(citations omitted); *See also*

*Fancy Cat Rescue Team, Inc. v. Crenson*, Cause No. JKB-14-1073, *Memorandum* (D.Md. Jan.

21, 2015).

155.    A governmental and/or public entity "may not deny a benefit to a person on a

basis that infringes upon his constitutionally protected interests – especially, his interest in his

freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

156.    Plaintiff Cashel's position as a volunteer at Defendants' Pet Adoption Center

constituted a valuable governmental benefit, including the benefits of serving her community by

partnering with a government organization.

27

157.    Plaintiff Cashel engaged in acts of association by associating herself with and participating in the activities of certain organizations and groups which were perceived as critical of Defendants and the management of Defendant St. Louis County's Pet Adoption Center ("Shelter").

158.    Defendant Carole Baskin knew and/or perceived Plaintiff Cashel as belonging to and/or associating herself with certain organizations and groups which she perceived as critical of Defendants and the management of Defendant St. Louis County's Pet Adoption Center ("Shelter").

159.    Defendant Baskin, both individually and in concert with others, took adverse action against Plaintiff Cashel for her associations with certain organizations and groups sufficient to chill a person of ordinary firmness from continuing in that activity, including but not limited to losses of privileges and culminating in her termination from her position as a volunteer.

160.    Defendant Baskin's actions, both individually and in concert with others, were motivated at least in part by Plaintiff Cashel's exercise of her rights to freedom of association.

161.    Defendant Baskin's actions, both individually and in concert with others, exhibited a reckless or callous disregard of and/or indifference to Plaintiff Cashel's protected constitutional rights, which justifies an award of punitive damages.

162.    As the result of Defendant Baskin's unlawful actions, both individually and in concert with others, Plaintiff Cashel has been forced to retain counsel in this matter and has incurred and will continue to incur legal costs in this matter and, therefore, is entitled to an award of attorneys' fees and costs, as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Anne Cashel respectfully prays that this Honorable Court

28

enter judgement in her favor and individually against Defendant Carole Baskin for unlawful retaliation for exercise of her First Amendment rights to freedom of association; grant her an award compensatory damages in amount deemed just and reasonable by this Court; grant her an award of punitive damages deemed just and reasonable by this Court; order Defendants to pay her attorneys' fees and legal costs; and grant her any and all other relief, both legal and equitable, to which she is entitled by law.

### Count X – Unlawful Policy, Practice, or Custom

### Plaintiff Anne Cashel against Defendants St. Louis County and Sam Page

163.    Plaintiff Anne Cashel hereby incorporates by reference paragraphs 2 through 162 of this Complaint and as if set forth fully herein.

164.    As described herein, Defendants Spring Schmidt and Carole Baskin, while acting under color of state law and in concert with others, deprived Plaintiff Cashel of her rights, privileges, and immunities as secured by the Constitution of the United States of America by retaliating against her for exercise of her First Amendment rights to freedoms of speech and association.

165.    The misconduct of the individually-named Defendant officials of Defendant St. Louis County, as described herein, was objectively unreasonable and undertaken with malice, willfulness, and/or reckless indifference to the rights of Plaintiff Cashel.

166.    The misconduct of the individually-named Defendants, as described herein, was authorized by and undertaken pursuant to a policy, practice, and custom that what so widespread and well-settled as to constitute an official policy and/or standard operating procedure of Defendant St. Louis County in that:

(a)      Defendant St. Louis County adopted an official policy to terminate the

entirety of the Shelter volunteers, including Plaintiff Cashel, and subject any

terminated volunteer to an application and interview process designed to eliminate

those who, like Plaintiff Cashel, had engaged in acts of protected speech that were

critical of Defendants St. Louis County, Schmidt, and Baskin.

(b)      This practice and custom was so widespread and well-settled that that the

policymaker(s) of Defendant St. Louis County, including Defendant Page, knew

and/or should have known of it.

(c)      Defendant St. Louis County openly acknowledges and has ratified the

existence of this policy, practice, or custom in its October 25, 2019 email

terminating the volunteer staff in their entirety, as well as in subsequent emails

and public statements.

167.    The serious harms incurred by Plaintiff Cashel were the direct consequence of the

official policy, practice, or custom of Defendants St. Louis County and Page.

168.    As a direct and proximate consequence of the acts of Defendant St. Louis County,

Plaintiff Cashel suffered damages in the form of, *inter alia*, deprivation of her constitutional

rights as guaranteed under the First and Fourteenth Amendments.

169.    As the result of the actions of the individually-named Defendants and Defendant

St. Louis County, Plaintiff Cashel has suffered and continues to suffer injury and damages.

170.    As a result of Defendant St. Louis County's unlawful actions and infringements

of her protected rights, Plaintiff Cashel has been compelled to retain counsel in this matter and is

therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Anne Cashel respectfully prays that this Honorable Court

enter judgement in her favor against Defendants St. Louis County and Sam Page for adopting

and/or maintaining an unlawful policy, pattern, or custom which resulted in the infringements of

Plaintiff Agnew's First Amendment rights to freedom of association; grant her an award

compensatory damages in amount deemed just and reasonable by this Court; grant her an award

of punitive damages deemed just and reasonable by this Court; order Defendants to pay her

attorneys' fees and legal costs; and grant her any and all other relief, both legal and equitable, to

which she is entitled by law.

Respectfully submitted, on this 7th
day of November, 2019,

*/s/ Daniel J. Kolde*
Daniel J. Kolde, # 64965(MO)
P.O. Box 440344
St. Louis, Missouri 63144-9998
Tel:    636.675.5383
Email: daniel.kolde.law@gmail.com

*Attorney for Plaintiffs*