UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER AGNEW, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-03063-SEP |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants St. Louis County, Sam Page, Spring Schmidt, and Carole Baskin's Motion to Dismiss or Alternative Motion for Summary Judgment. Doc. [8]. The motion is fully briefed. For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part, and the Motion for Summary Judgment will be denied.

**FACTS AND BACKGROUND**[1]

This is a First Amendment challenge to St. Louis County's closure of a volunteer program at a pet shelter. Plaintiffs Jennifer Agnew and Anne Cashel, who had been volunteers with the program, filed suit on November 7, 2019, alleging that its closure was in retaliation for their having publicly criticized the shelter. Doc. [1]. Defendants filed a Motion to Dismiss or Alternative Motion for Summary Judgment on January 1, 2020. Doc. [8].

Defendants in this case include St. Louis County (the "County"); Sam Page, the County Executive; Spring Schmidt, a County employee and Director of the Department of Public Health; and Carole Baskin, a County employee and Director of the Department of Public Health.

St. Louis County Animal Care and Control ("ACC") is a governmental office of the St. Louis County Department of Health that maintains and operates the St. Louis County Pet Adoption Center (the "Shelter"). Doc. [1] ¶¶ 11-12. The Shelter has a volunteer program where

---

[1] The facts here are taken from the allegations set out in Plaintiff's complaint. Doc. [1]. The Court assumes their truth for purposes of its analysis of the Motion to Dismiss. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

1

volunteers participate in various activities, such as walking and interacting with the animals, assisting in adoptions, and performing other daily functions related to animal care. *Id.* ¶ 17. Around October 25, 2019, Defendants terminated all 425 ACC volunteers, including Plaintiffs Agnew and Cashel, who were both active members in the ACC volunteer program.

Plaintiffs allege they witnessed and documented various instances of Shelter mismanagement, including "unnecessary euthanasia of otherwise adoptable animals; mistreatment of the animals by staff; improper manipulation of euthanasia statistics . . . and failures by staff and management to provide humane care and treatment to the Shelter animals." *Id.* ¶ 25.  Plaintiff Agnew submitted open record requests to the County regarding the management of the Shelter, and she made the records publicly available. *Id.* ¶ 26.  Plaintiffs Agnew and Cashel, as well as other ACC volunteers, voiced these concerns at Defendant St. Louis County's Animal Advisory Board meetings and County Council public meetings. *Id.* ¶ 27. Plaintiffs also communicated with elected County officials, members of the media, and Shelter management, including but not limited to Defendant Schmidt, Defendant Baskin, and Katrina Utz. *Id.*  Plaintiffs claim they engaged in these public acts of speech from December 2018 until October 2019. According to Plaintiffs, after they publicly criticized the Shelter, Defendants began to restrict the privileges of volunteers by denying access to certain rooms, restricting access to animal information, and limiting contact with the animals. *Id.* ¶ 28.

Defendants have been the subject of negative media coverage criticizing the Shelter, its management, and its "statistical sham." *Id.* ¶¶ 29-30.  At least two media outlets credited Shelter volunteers as their information source. *Id.* ¶ 30.  Plaintiffs claim that those journalists were referring, at least in part, to Plaintiffs' statements. *Id.* ¶ 30.  Defendant Schmidt responded publicly to the media's statements, both to the press and before the County Council. *Id.* ¶ 33. On or about October 9, 2019, the *Riverfront Times* published a lengthy article about the Shelter's mismanagement and poor conditions. *Id.* ¶ 36.  The article reported it interviewed volunteers and County officials, who offered "clashing viewpoints on who deserves the most fault." *Id.* ¶ 38.  On or about October 16, 2019—one week after the *Riverfront Times* article—Defendant Baskin met with Shelter volunteers and stated that the County is not required to have volunteers, which Plaintiffs understood to be a threat to the ACC volunteer program. *Id.* ¶¶ 40-41

On or about October 22, 2019, Plaintiff Agnew intervened to stop a dog fight when Shelter employees' attempts to resolve the situation violated Shelter procedure. *Id.* ¶ 42.  As a

2

result of that intervention, Agnew was suspended. *Id*. Three days later, on October 25, 2019, Plaintiff Agnew posted on her personal social media page about the Shelter's mismanagement and her suspension. *Id*. ¶ 46. Both Plaintiffs are affiliated with social media groups that are critical of the Shelter, and both have made posts critical of the Shelter on personal pages and in closed groups. Additionally, Plaintiffs Agnew and Cashel are affiliated with St. Louis County SAVE, a not-for-profit which has publicly criticized the Shelter. Plaintiffs assert that Defendants were "surreptitiously monitoring the social media postings and pages of the volunteers, both personal and group pages," and Plaintiffs cite Defendant Schmidt as stating she and other County employees "had eyes on" the social media pages. *Id*. ¶¶ 55-56.

On or about October 25, 2019,[2] Defendants terminated all Shelter volunteers, approximately 425 people, including Plaintiffs Agnew and Cashel. *Id.* ¶ 57. The Shelter explained that after this date, prospective volunteers had to submit an application, interview, and, if accepted, attend a restructured orientation. Every volunteer was required to reapply to continue volunteering. *Id*. ¶ 58. Plaintiffs allege that Defendants terminated the entire volunteer staff "in order to chill and discourage future speech by any volunteer who would potentially seek to return to the volunteer program." *Id.* ¶ 72. They claim that volunteers under the rebooted program are required to sign an unlawful non-disclosure agreement that obliges them to surrender their cell phones before entering non-public areas of the Shelter to prevent documentation of these areas and the animals. *Id.* ¶ 78.

Plaintiffs' Complaint has ten Counts:

**Count I:** First Amendment Retaliation for the Exercises of Protected Speech (Plaintiff Agnew against Defendant Schmidt)

**Count II:** First Amendment Retaliation for the Exercises of Rights to Freedom of Association (Plaintiff Agnew against Defendant Schmidt)

**Count III:** First Amendment Retaliation for the Exercises of Protected Speech (Plaintiff Agnew against Defendant Baskin)

**Count IV:** First Amendment Retaliation for the Exercises of Rights to Freedom of Association (Plaintiff Agnew against Defendant Baskin)

---

[2] The Complaint states Plaintiff Agnew's social media post was on October 25, 2019. Doc. [1] ¶¶ 46, 53. The Complaint later states that Defendants terminated all volunteers on October 25, 2019, and that this was "a mere two (2) days after Plaintiff Agnew's widely circulated social media post." *Id*. ¶ 57. That temporal discrepancy has no effect on the analysis herein. Therefore, the Court will use October 25, 2019, as the date of both the social media post and the termination of the volunteer program.

>**Count V:** Unlawful Policy, Practice, or Custom (Plaintiff Agnew against Defendants St. Louis County and Page)
>
>**Count VI:** First Amendment Retaliation for the Exercises of Protected Speech (Plaintiff Cashel against Defendant Schmidt)
>
>**Count VII:** First Amendment Retaliation for the Exercises of Rights to Freedom of Association (Plaintiff Cashel against Defendant Schmidt)
>
>**Count VII:** First Amendment Retaliation for the Exercises of Protected Speech; Plaintiff Anne Cashel against Defendant Carole Baskin
>
>**Count IX:** First Amendment Retaliation for the Exercises of Rights to Freedom of Association; Plaintiff Anne Cashel against Defendant Carole Baskin
>
>**Count X:** Unlawful Policy, Practice, or Custom; Plaintiff Anne Cashel against Defendants St. Louis County and Sam Page

Defendants move to dismiss all counts for lack of subject matter jurisdiction and for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6). In the alternative, they claim to be entitled to summary judgment on all counts. *See* Fed. R. Civ. P. 56.

**LEGAL STANDARDS**

**I.     Motion to Dismiss**

    **A.  Rule 12(b)(1)**

Defendants move to dismiss Plaintiffs' lawsuit under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See U.S. v. Morton*, 467 U.S. 822, 828 (1984). Federal subject matter jurisdiction requires the plaintiff to "demonstrate an actual, ongoing case or controversy within the meaning of Article III." *Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 789-90 (8th Cir. 2004). "A case or controversy requires a claim that is ripe and a plaintiff who has standing." *Archdiocese of St. Louis v. Sebelius*, 920 F. Supp. 2d 1018, 1023 (E.D. Mo. 2013). A claim is not ripe if the injury "rests upon contingent future events that may not occur as anticipated." *KCCP Trust v. City of N. Kansas City*, 432 F.3d 897, 899 (8th Cir. 2005).

To justify dismissal under Rule 12(b)(1), "the complaint must be successfully challenged on its face or on the factual truthfulness" of its assertions. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *see also Archdiocese of St. Louis*, 920 F. Supp. at 1023 (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In order to evaluate the challenge, the Court must first identify the type of challenge brought by the defendant. *Moynihan v. Gutierrez*, No.

4

4:07CV00506 ERW, 2007 WL 2885342, at *2 (E.D. Mo. Sept. 27, 2007). In a factual challenge, the defendant challenges the factual truthfulness of the assertions, and the Court may consider matters outside the pleadings. *Osborn*, 918 F.2d at 729. In a facial challenge, the defendant claims the complaint "fails to allege an element necessary for subject matter jurisdiction," and the Court presumes true "all of the factual allegations concerning jurisdiction." *Titus*, 4 F.3d at 593.

    **B.  Rule 12(b)(6)**

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and construes all reasonable inferences in favor of the nonmoving party. *See Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specifically, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.,* 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly,* 550 U.S. at 556.

**II.**  **Motion for Summary Judgment**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver*, 931 F.3d at 811 (quoting *Wingate v. Gage Cnty. Sch. Dist.*, 528 F.3d 1074, 1079 (8th Cir. 2008)).

5

"A court considering a motion for summary judgment must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Dryer v. Nat'l Football League*, 814 F.3d 938, 941-42 (8th Cir. 2016). A Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

### I. Motion to Dismiss

#### A. Rule 12(b)(1)

Defendants contend the Court lacks subject-matter jurisdiction because "Plaintiffs have failed to plead sufficient facts to show that their claims are ripe for adjudication" by failing to "establish that they have sought and been denied volunteer positions with the new ACC volunteer program." Doc. [18] ¶ 1. Defendants do not challenge the truthfulness of any fact; they agree Plaintiffs were no longer part of the old ACC volunteer program as of October 25, 2019. Instead, Defendants contend that on the face of the Complaint, Plaintiffs have not established a "case or controversy" because the alleged injury is not ripe for adjudication.

Plaintiffs state that the injury is their "*actual* termination,"[3] Doc. [19] at 2, but Defendants maintain that Plaintiffs have not been injured unless they have sought and been denied volunteer positions with the new ACC program, Doc. [18] ¶ 1. Defendants argue that the actual termination cannot be an injury because it arises out of the denial of a government benefit—i.e., the ACC volunteer program—and citizens have no right to the existence of a government benefit.[4] *See Perry v. Sinderman,* 408 U.S. 593, 597 (1972); *Cuffley v. Mickes*, 208

---

[3] Plaintiffs also state their injury as the "*actual* conditioning of any return to service upon signing a non-disclosure agreement." Doc. [9] at 2. Because the Court finds Plaintiffs' alleged termination a sufficient harm to confer standing, it need not address whether conditioning a government benefit on signing a non-disclosure agreement also qualifies.

[4] The Supreme Court in *Perry v. Sinderman*, 408 U.S. 593, 597 (1972), stated that legal entitlement to a government position is not required for it to be considered a government benefit. In that case, the plaintiff was an untenured teacher who claimed his contract was not renewed because he publicly criticized his employer. This extends to government volunteers because volunteering for the government, like working for it, is a benefit, and it is irrelevant whether there is a legal entitlement to the position. The Eighth Circuit in *Cuffley v. Mickes*, 208 F.3d 702, 707-08, 708 n.5 (8th Cir. 2008), cites *Perry* when stating legal entitlement is not required. The Eighth Circuit also states that at least two other circuits have directly applied this analysis to volunteer government positions. Furthermore, Defendants do not dispute the application of *Perry* to volunteer positions.

F.3d 702, 707-08, 708 n.5 (8th Cir. 2008) (citing *Perry*, 408 U.S. at 596-98).  The injury, therefore, must be Plaintiffs' potential rejection from the rebooted program, which either will not happen (as is the case for Plaintiff Cashel, who is currently a volunteer), or is too speculative (as is the case for Plaintiff Agnew, who has not applied).  But in *Perry*, the Supreme Court held that even though there is no right to a government benefit, such a benefit still cannot be denied on a basis that infringes a constitutionally protected interest.  408 U.S. at 597.  Thus, if volunteers are terminated from a government volunteer program in retaliation for the exercise of free speech or association—which is what Plaintiffs' Complaint alleges—that *is* an injury.  Accordingly, Plaintiffs have pleaded facts sufficient to establish subject matter jurisdiction, and the Rule 12(b)(1) motion will be denied.

### B. Rule 12(b)(6)

Defendants' Motion to Dismiss seeks dismissal of all ten counts in the Complaint for failure to state a claim.  Defendants contend that Plaintiffs failed to state an underlying constitutional claim regarding the elimination of the ACC volunteer program, and that they did not plead sufficient facts to show that but for their speech, the ACC volunteer program would not have been rebooted.  Doc. [8] ¶ 2.  The Motion also seeks dismissal of Defendant Sam Page, who was sued in his official capacity only.

In what follows, the Court will analyze substantively similar claims together.

#### i. *Plaintiffs' Free Speech Retaliation Claims*

Plaintiffs bring four counts of First Amendment retaliation for the exercise of protected speech, including:  Count I, Plaintiff Agnew against Defendant Schmidt; Count III, Plaintiff Agnew against Defendant Baskin; Count VI, Plaintiff Cashel against Defendant Schmidt; and Count VIII, Plaintiff Cashel against Defendant Baskin.  In those Counts, Plaintiffs allege that Schmidt and Baskin retaliated against them for exercising their right to free speech, in violation of 42 U.S.C. § 1983, by terminating them for publicly criticizing the Shelter.  Plaintiffs bring their retaliation claims against Schmidt and Baskin in their individual capacities.

Retaliation by a government actor in response to an exercise of free speech does qualify as a basis for § 1983 liability.  *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019); *Pendleton v. St. Louis Cnty.,* 178 F.3d 1007, 1011 (8th Cir. 1999).  To establish a retaliation claim under § 1983, each Plaintiff must show: 1) "[s]he was engaged in activity protected by the First Amendment," 2) the "government official" took adverse employment action against [her]," and

7

3) "[her] protected speech was a substantial or motivating factor in the [government official's] decision to take the adverse employment action." *Davenport v. Univ. of Ark. Bd. of Trs.* 553 F.3d 1110, 1113 (8th Cir. 2009).

The Court's evaluation of the first and second elements is identical for all four free speech retaliation claims, because both Plaintiffs alleged the same public speech and the same adverse employment action in each Count. Therefore, the Court will address these elements together for all four Counts and will then separately analyze the causation elements as to each Defendant.

To determine whether a plaintiff engaged in speech protected by the First Amendment, the Court engages in a two-step inquiry established in *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). First, the Court determines whether the plaintiff made her comments "speaking as [a] citizen[] about matters of public concern." *Garcetti*, 547 U.S. at 419. If the first step is satisfied, the Court balances the plaintiff's right to speak against the interest of the government in promoting efficiency by prohibiting her speech. *See Hafley v. Lohman*, 90 F.3d 264, 267 (8th Cir. 1996) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

In relation to the first step of *Garcetti*, the Eighth Circuit has counseled that "[a] public employee's speech is not protected by the First Amendment if it 'owes its existence' to [the employee's] professional responsibilities," *McGee v. Pub. Water Supply Dist. No. 2*, 471 F.3d 918, 921 (8th Cir. 2006) (quoting *Garcetti*, 547 U.S. at 411), because "a public employee does not speak as a citizen if [she] speaks pursuant to [her] job duties." *Lindsey*, 491 F.3d at 898; *accord Davenport.*, 553 F.3d at 1113. Further, "[a] public employee's speech is pursuant to his employment duties 'if it is part-and-parcel' of the employee's concerns about his ability to 'properly execute his duties.'" *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018) (citation omitted). The proper judicial inquiry is a "practical one," not controlled or limited by "[f]ormal job descriptions." *Garcetti*, 547 U.S. at 424.

Plaintiffs' allegedly protected speech is public criticism of the "management, operations, and conditions of the ACC shelter facility." Doc. [13] at 1. Although such speech is related to Plaintiffs' work for the County, it was not pursuant to their job duties, which did not include reporting wrongdoing at the shelter. *See Davenport*, 553 F.3d at 1113 (finding an employee's complaint about a supervisor's misuse of resources to be protected speech where his "duties did not include reporting either wrongdoing by a superior officer or lack of resources"). Plaintiffs

8

were speaking not in their capacities as ACC volunteers but as private citizens on a matter of public concern. Their speech is therefore entitled to First Amendment protection.

Because Plaintiffs have adequately pleaded that they made their comments about the alleged Shelter mismanagement as private citizens speaking on a matter of public concern, the Court would normally proceed by balancing Plaintiffs' alleged interest in speaking out against the government's interest in promoting efficiency. *See Hafley*, 90 F.3d at 267 (citing *Pickering*, 391 U.S. at 568). But Defendants make no argument that prohibiting Plaintiffs' speech would have promoted governmental efficiency, so the Court has nothing against which to balance Plaintiffs' interests. Under the circumstances, the Court finds that Plaintiffs have pleaded sufficient interest in speaking out to satisfy *Pickering*. *See Hafley*, 90 F.3d at 267 ("The *Pickering* balance understandably favors the plaintiff when the test is based solely on the allegations in the complaint."); *cf. Lindsey*, 491 F.3d at 900-01 (finding that the *Pickering* balancing test is not triggered where there is no evidence that the speech at issue caused disruption).

Plaintiffs also easily satisfy the second element in establishing a prima facie case of First Amendment retaliation. Defendants did terminate them, which is an adverse employment action. *See e.g.*, *Morris v. City of Chillicothe*, 512 F.3d 1013, 1019 (8th Cir. 2008). Thus, Plaintiffs Agnew and Cashel have pleaded sufficient facts to show 1) they engaged in protected speech, and 2) Defendants Schmidt and Baskin took an adverse employment action against each of them. To survive the Motion to Dismiss, then, Plaintiffs have only to show that they have sufficiently pleaded that their "protected speech was a substantial or motivating factor" in each Defendant's decision to terminate them. *Davenport*, 553 F.3d at 1113.

    a. <u>Retaliation claims against Defendant Schmidt</u>

The Court first addresses the causation allegations against Defendant Schmidt (Counts I and VI). Once again, to satisfy this element, Plaintiffs must allege facts sufficient to establish their speech was a "substantial or motivating factor" in their termination. *Davenport*, 553 F.3d at 1113. In the Complaint, Plaintiffs allege that their termination was "motivated at least in part by Plaintiff [Agnew's and Cashel's] exercise of [their] rights to freedom of speech." Doc. [1] ¶¶ 85, 131. Defendants contend that Plaintiffs did not establish the causation element of a retaliation claim because Plaintiffs failed to show they would not have been terminated "but for" their speech. Doc. [8] ¶ 4.

9

Defendants incorrectly state Plaintiffs' burden at this stage in the litigation. First Amendment claims are analyzed under a three-part burden shifting test. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Initially, each Plaintiff must show that her protected activity was a "substantial factor" or "motivating factor" in the Defendant's adverse employment action. *Id.* If that initial standard is met, the burden shifts to the employer to "show a legitimate, nondiscriminatory reason for his or her actions." *Morris*, 512 F.3d at 1019. If the employer meets that burden, only then does the burden shift back to the Plaintiff to show that the employer's actions were a "pretext for illegal retaliation." *Id.* By insisting that Plaintiffs plead facts showing that their speech was a "but for" cause of their termination, Defendants attempt to put Plaintiffs to a heightened burden of proof prematurely. Initially, they are required only to plead sufficient facts to support the allegation that it was "a substantial or motivating factor." *Davenport*, 553 F.3d at 1113.

Plaintiffs list several instances of their public speech, including at public meetings of the County's Council, public meetings of the Animal Advisory Board, oral and written communications to elected County officials, oral and written communication to Shelter management—including Defendants Schmidt and Baskin—and to members of the media, and on social media. Doc. [1] ¶¶ 27, 46-48. Media sources published highly critical reports about the Shelter based on statements from volunteers made during those public meetings. *Id.* ¶ 31. In response, Defendant Schmidt "was forced to publicly respond both to the press and before Defendant St. Louis County's Council." *Id.* ¶ 33.

Defendants contend that Plaintiffs failed to plead that Defendants "knew Plaintiffs criticized the ACC shelter on social media." Doc. [19] at 2. Defendants are mistaken. Plaintiffs allege that Defendants "were aware of . . . posts critical of the Shelter" made by Plaintiffs, and that Defendants were "surreptitiously monitoring" Plaintiffs' social media pages. *Id.* ¶¶ 54-55. Plaintiffs also claim that "Defendant Schmidt stated that she and other employees of Defendant St. Louis County 'had eyes on' the volunteers' social media pages and posts." *Id.* ¶ 56. That comment allegedly occurred right after Plaintiff Agnew's October 25, 2019, social media post regarding her suspension. While temporal proximity is not sufficient to prove retaliation, it can be evidence of retaliation. *Skalsky v. Indep. Sch. Dist. No. 743*, 772 F.3d 1126, 1131 (8th Cir. 2014) ("Temporal proximity between protected activity and an adverse employment action can constitute evidence the protected activity was a substantial or motivating factor."). Therefore,

Plaintiffs have pleaded sufficient factual evidence that Defendants were aware of their comments on social media.

Even if they had not, however, their retaliation claims would not fail. Plaintiff lists many other instances of public speech, Doc. [1] ¶ 27, including media reports to which Defendant Schmidt responded directly. *Id.* ¶ 33. Those facts are sufficient to support Plaintiffs' allegation that speech was a substantial or motivating factor in the termination of the ACC volunteers, even without considering the social media speech.

Plaintiffs have pleaded sufficient facts to support all three elements of a retaliation claim against Defendant Schmidt for purposes of a Rule 12(b)(6) challenge. Therefore, Plaintiffs' Counts I and VI will survive Defendants' Motion to Dismiss.

### b. Retaliation claims against Defendant Baskin

Plaintiffs have also satisfied the causation prong of the retaliation standard as to Defendant Baskin for the purposes of Counts III and VIII. As discussed above, to show causation, Plaintiffs need to establish only that their speech was a "substantial or motivating factor" in their termination. *Davenport*, 553 F.3d at 1113.

Plaintiffs both allege that their termination was "motivated at least in part by [their] exercise of [their] rights to freedom of speech." Doc. [1] ¶¶ 104, 141. In support of that claim, they allege that they spoke to Defendant Baskin directly about their concerns with the Shelter's management and conditions, in addition to their many public statements to other people and entities. *Id.* ¶ 27. They further allege that, on or about October 16, 2019, seven days after the *Riverfront Times* article criticizing the Shelter, Defendant Baskin met with the volunteers and said the County "was not required to have volunteers at all." *Id.* ¶ 40. Plaintiffs pleaded that the statement was a direct threat to the volunteers and the program. *Id.* ¶¶ 40-41. Assuming the facts as alleged to be true and giving all reasonable inferences to Plaintiffs, the Court finds that Plaintiffs have adequately alleged causation for the purposes of their retaliation claim against Defendant Baskin. As stated above, temporal proximity is not enough to establish causation, but it is evidence of such. *Skalsky*, 772 F.3d at 1131. Defendant Baskin's statement, in addition to the fact that she was aware of critical media reports that the media credited to volunteers, provide sufficient evidence of causation to survive a motion to dismiss.

Plaintiffs have sufficiently alleged all three elements of a retaliation claim against Defendant Baskin; therefore, Counts III and VIII will not be dismissed.

11

### *ii. Plaintiffs' Freedom of Association Retaliation Claims*

Plaintiffs bring four counts of First Amendment retaliation for the exercise of freedom of association, including: Count II, Plaintiff Agnew against Defendant Schmidt; Count IV, Plaintiff Agnew against Defendant Baskin; Count VII, Plaintiff Cashel against Defendant Schmidt; and Count IX, Plaintiff Cashel against Defendant Baskin. In those counts, Plaintiffs allege that Defendants retaliated against them for exercising freedom of association, in violation of 42 U.S.C. § 1983, by terminating them for associating with groups that were critical of the Shelter. Plaintiffs make these claims against Schmidt and Baskin in their individual capacities.

The Eighth Circuit has held that the First Amendment restrains the government from retaliating against a public employee based on an exercise of free speech or association. *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648 (8th Cir. 2007). An association retaliation claim has the same elements as a speech retaliation claim and uses the same three-part burden shifting analysis. For each of these claims, the Plaintiff involved must again show that "(1) she engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against her; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action." *Id.* at 655. If Plaintiffs meet their initial burden, Defendants must then demonstrate that they would have terminated Plaintiffs even without their association. *Id.* (citing *Mt. Healthy*, 429 U.S. at 287).

In all four association retaliation counts, Plaintiffs allege the same associations, the same adverse employment action, and the same facts supporting causation. Therefore, the Court will address the claims together.

The Eastern District of Missouri has applied *Garcetti*'s holding—that a public employee's speech is protected only when speaking as a citizen—to a public employee claiming retaliatory termination based on the exercise of free association. *See Lloyd v. City of St. Charles, Mo.*, 617 F. Supp. 2d 830, 834 (E.D. Mo. 2008). A public employee's association is not protected when she associates pursuant to her job duties. Here, Plaintiffs' association with the "certain organizations and groups" perceived to be critical of Defendants was not pursuant to their job duties; therefore, they engaged in those associations as citizens, and the association is protected. Doc. [1] ¶¶ 92-93.

Plaintiffs also satisfy the second and third elements in establishing a prima facie case of First Amendment retaliation. The alleged adverse employment action is again their termination.

And for causation, the same three-part burden shifting test applies that the Court applied in the context of free speech retaliation claims.  At this stage, Plaintiffs must plead facts sufficient to show that their association was a "substantial or motivating factor" in Defendant's decision to terminate them.  *Davison*, 490 F.3d at 655.  In each of the four freedom of association retaliation counts, Plaintiffs allege that the Defendants' decisions to terminate them "were motivated at least in part by Plaintiff [Agnew's and Cashel's] exercise of [their] rights to freedom of association."  *Id.* ¶¶ 95, 114, 141, 160.  They also allege that Defendants were aware of Plaintiffs' memberships in social media groups critical of the Shelter because Defendants were "monitoring the social media postings and pages of the volunteers, both personal and group pages."  Doc. [1] ¶ 55.  Defendant Schmidt's statement that she "had eyes on" volunteer social media pages lends further support to Plaintiffs' claims.

   Defendants contend that this is "not adequate to satisfy the rigorous pleading standard" and that there are "more plausible explanations for the actions of Defendants."  Doc. [19] at 3.  The Court need not decide if there are more plausible explanations.  To survive a motion to dismiss, Plaintiffs only need to allege facts supporting each element of their claims.  *Twombly*, 550 U.S. at 555.  Because Plaintiffs have done so, their freedom of association retaliation claims, Counts II, IV, VII, and IX, will survive the Motion to Dismiss.

     iii. *Unlawful Policy, Practice, or Custom Claims*

   In Counts V and X, each Plaintiff alleges that Defendants Sam Page and the County violated § 1983 by adopting an unlawful policy, practice, or custom of terminating volunteers for engaging in constitutionally protected speech and association.  *See* Doc. [1] ¶¶ 120, 166.  Plaintiffs bring their § 1983 claims against Page in his official capacity only, rendering them redundant of Plaintiffs' claims against the County.  *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity.").  Therefore, Plaintiffs' § 1983 claims against Page will be dismissed.

   A municipality is not liable under § 1983 for the negligent acts of its employees or officials.  *Russell v. Hennepin County,* 420 F.3d 841, 846 (8th Cir. 2005) (citing *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  Liability will not attach to a municipality solely because it employs an alleged tortfeasor.  *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690-94 (1978).  For a governmental entity to be liable under § 1983, the constitutional

13

deprivation must have been "committed pursuant to an official custom, policy, or practice," or the violation must be "so pervasive among non policymaking employees [sic] . . . 'as to constitute a custom or usage with the force of law.'" *Granda v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007) (citation omitted).

Plaintiffs do not specify a legal theory for their municipal liability claim.  Their Complaint contends that the County has "adopt[ed] and/or maintain[ed] an unlawful policy, pattern, or custom which resulted in the infringements of [Plaintiffs'] First Amendment rights." Doc. [1] ¶¶ 124, 170.  And, in their opposition to the Motion to Dismiss, they identify two allegedly "unconstitutional policies and/or practices":  1) "the termination of the volunteers," and 2) "conditioning of any return to volunteer service upon the signing of unlawful non-disclosure agreements."  Doc. [13] at 14-15; *see also* Doc. [1] ¶¶ 120(a), 166(a).  Their allegations invoke the standards for municipal liability based on both an unconstitutional custom and an unconstitutional policy.  *See* Doc. [1] ¶¶ 5, 120, 121, 166, 167.  Therefore, the Court will address both possible bases for municipal liability.

The Eighth Circuit carefully differentiates between municipal liability claims based on an unofficial "custom" and those based on an official "policy."  *See Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998).  To establish a claim for municipal liability based on a custom, a plaintiff must plead:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (citation omitted).

Plaintiffs fail to state a claim for custom liability because they do not allege a "continuing, widespread, persistent pattern of unconstitutional misconduct." *See Johnson*, 725 F.3d at 828.  The only governmental action the Complaint identifies as the basis for Plaintiffs' municipal liability claims is "an official policy to terminate the entirety of the Shelter volunteers . . . and subject any terminated volunteer to an application and interview process designed to eliminate those who . . . had engaged in acts of protected speech that were critical of

14

Defendants . . . ." Doc. [1] ¶¶ 120(a), 166(a).  Notwithstanding their claims that the reboot of the ACC volunteer program was "undertaken pursuant to a policy, practice and custom," they allege no other instances of similar misconduct by any governmental authority.  Devoid of such allegations, the Complaint fails to state a claim for municipal liability based on an unconstitutional custom.  *See McGautha v. Jackson Cty., Mo., Collections Dep't*, 36 F.3d 53, 56-57 (8th Cir. 1994) ("Liability for an unconstitutional custom or usage . . . cannot arise from a single act."); *see also Ball-Bey v. Chandler*, No. 4:18-CV-01364-SPM, 2020 WL 6708516, at *8-*10 (E.D. Mo. Nov. 16, 2020) (discussing the quality and quantity of allegations that past courts have found to sufficiently plead a widespread, persistent custom of unconstitutional misconduct).[5]

Unlike an unconstitutional "custom," an unconstitutional "policy" may be inferred from a single act.  "A 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible under state law for establishing final policy with respect to the subject matter in question.'"  *Russell*, 420 F.3d at 847 (quoting *Hayes v. Faulkner Cnty.*, 388 F.3d 669, 674 (8th Cir. 2004)).  Although "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business."  *Davison*, 490 F.3d at 659 (internal quotation marks and citations omitted); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."); *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1547 (8th Cir. 1992) ("As a final policymaker for the department, any action taken by [Defendant] constitutes the policy of St. Louis County in these circumstances.").

Lacking evidence of a continuing, widespread pattern of misconduct, then, Plaintiffs might still make out a municipal liability claim based on an unconstitutional policy if they were

---

[5] *See also, e.g.*, *Meier v. City of St. Louis, Mo.*, 934 F.3d 824, 828 (8th Cir. 2019) (finding that a jury could find a "continuing, widespread, persistent practice" based on testimony from multiple sources that a practice occurred "regularly" and was taught by the department's training officer); *Watson v. Boyd*, 447 F. Supp. 3d 924, 950 (E.D. Mo. 2020) (holding that seven complaints from citizens and three complaints from employees regarding an official's misconduct were sufficient evidence of a custom to defeat summary judgment).

15

to allege a single unconstitutional decision "taken by the highest officials responsible for setting policy." *Davison*, 490 F.3d at 659. But Plaintiffs make no such allegation. They allege that Defendant Page is the "final policymaking authority over the matters," Doc. [1] ¶ 5; *see also* Doc. [13] at 15, but that it was Defendants Schmidt and Baskin who terminated them, Doc. [1] ¶¶ 118, 164. According to the Complaint, Schmidt and Baskin have "managerial responsibility and decision-making authority for [their] department." Doc. [1] ¶¶ 15-16. Plaintiffs do not allege that they have final policymaking authority. And as to those who do, they allege only speculatively that "the policymaker(s) of Defendant St Louis County, including Defendant Page, *knew and/or should have known* of [the policy]." Doc. [1] ¶ 120 (emphasis added). They do not allege that Defendant Page—with his "final policymaking authority," Doc. [1] ¶ 5— *made* the decision or even participated in the decision-making in any way. Therefore, Plaintiffs fail to state a claim for municipal liability based on an unconstitutional policy.

In their opposition to the Motion to Dismiss, Plaintiffs also argue that the "conditioning of any return to volunteer service upon the signing of unlawful non-disclosure agreements" is an unconstitutional policy, Doc. [13] at 15, but their Complaint provides nothing more than conclusory allegations and speculation on that point. *See* Doc. [1] ¶¶ 75-78; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). They allege, for example, "[o]n information and belief," that the new agreement will require volunteers to "surrender" their cell phones before entering non-public areas, and that the County does not require employees in other departments to sign "such restrictive" agreements. But they allege no facts to support any of the few allegations they make about the agreements, nor do they even mention the agreements in the context of their municipal liability claims. Therefore, the Court finds that Plaintiffs have not stated a claim for municipal liability under § 1983 based on any custom, policy, or practice of requiring new volunteers to sign non-disclosure agreements.

Because Plaintiffs fail to plead any factual basis for municipal liability under § 1983, Counts V and X against St. Louis County will be dismissed.

## II.     Motion for Summary Judgment

In Plaintiffs' Response to Defendants' Statement of Uncontroverted Material Facts, Plaintiffs petition the Court for Rule 56(d) relief because they have not been provided the opportunity to conduct depositions and other discovery. Doc. [14] at 1. As outlined above, First

Amendment retaliation claims are analyzed under a three-part burden shifting test. *Morris*, 512 F.3d at 1019. Once Plaintiffs have shown that their exercise of First Amendment rights was a motivating factor in their termination, the burden shifts to Defendants to show a "legitimate, nondiscriminatory reason" for the termination. *Id.* If satisfied, the burden shifts back to Plaintiffs to prove that Defendants' reason was a "pretext for illegal retaliation." *Id.* Regardless of whether Defendants have met their burden, Plaintiffs have not had an opportunity to prove that Defendants' putative reason for the termination was merely pretextual, because they have not had the chance to depose Defendants or other potential witnesses. Defendants' Motion for Summary Judgment will therefore be denied.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss or Alternative Motion for Summary Judgment (Doc. [8]), is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Counts V and X against Defendants Sam Page and St. Louis County is **GRANTED**, and Counts V and X are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss is **DENIED** as to Counts I, II, III, IV, VI, VII, VIII, and IX.

**IT IS FINALLY ORDERED** that Defendants' Motion in the alternative for Summary Judgment is **DENIED without prejudice**.

An appropriate Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 30th day of November, 2020.

*Sarah E. Pitlyk*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE